UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PREMIUM SPORTS, INC.,

                              Plaintiff,

                                                          3:17-CV-0741
v.                                                        (GTS/DEP)

REEDER G. NICHOLS, individually and as officer,
director, shareholder, principal, manager and/or
member of JJAGQ Enterprises, LLC, a/k/a Reeder
Glenn Nichols, d/b/a The Blind Tiger Pub; and
JJAGQ ENTERPRISES, LLC d/b/a The Blind Tiger
Pub,

                              Defendants.
_____

APPEARANCES:                              OF COUNSEL:

LONSTEIN LAW OFFICE P.C.                   CHRISTOPHER J. HUFNAGEL, ESQ.
   Counsel for Plaintiff
80 North Main Street, P.O. Box 351
Ellenville, New York 12428

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this theft of cable services and copyright infringement

action filed by Premium Sports, Inc., ("Plaintiff") against Reeder G. Nichols and JJAGQ

Enterprises, LLC d/b/a The Blind Tiger Pub ("Defendants"), is Plaintiff's motion for default

judgment pursuant to Fed. R. Civ. P. 55(b)(2).  (Dkt. No. 20.)  For the reasons stated below, the

Court grants Plaintiff's motion.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Complaint

Liberally construed, Plaintiff's Complaint alleges that Plaintiff is the holder of the exclusive right to publically broadcast matches from the 2017 Six Nations Rugby tournament in the United States and of the right to authorize or license the public exhibition of those matches to commercial entities.  (Dkt. No. 1, at ¶ 7 [Pl.'s Compl.].)  Moreover, Plaintiff alleges that Defendants unlawfully intercepted and broadcast the March 11, 2017, match willfully and with full knowledge that their conduct violated the law for the purposes of obtaining a direct or indirect commercial advantage or private financial gain.  (*Id.* at ¶¶ 17-26.)  Finally, Plaintiff alleges that it filed an application for a Certificate of Registration for the March 11, 2017, match with the United States Copyright Office on March 24, 2017.  (*Id.* at ¶ 34.)  Based on these facts and allegations, Plaintiff's Complaint alleges three causes of action.  (*Id.* at ¶¶ 17-42.)

First, Plaintiff claims that Defendants acquired and publically exhibited, through illegal methods and without obtaining or paying for a license from Plaintiff, the England v. Scotland match on March 11, 2017, in The Blind Tiger Pub in violation of 47 U.S.C. § 605(a).  (*Id.* at ¶¶ 17-26.)

Second, Plaintiff claims that Defendants also willfully violated 47 U.S.C. § 553 as a result of the above-alleged conduct.  (*Id.* at ¶¶ 27-32.)

Third, Plaintiff claims that Defendants also willfully violated 17 U.S.C. § 501(a) as a result of the above-described conduct.  (*Id.* at ¶¶ 33-42.)

**B.      Plaintiff's Service of the Complaint and Defendants' Failure to Answer**

On July 26, 2017, and August 10, 2017, Plaintiff served the Summons and Complaint on Defendant JJAGQ Enterprises and Defendant Nichols, respectively.  (Dkt. No. 7, at 3; Dkt. No. 10, at 3.)  As of the date of this Decision and Order, Defendants have filed no Answer to that Complaint.  (*See generally* Docket Sheet.)

**C.      Clerk's Office's Entry of Default and Defendants' Non-Appearance**

On September 7, 2017, Plaintiff filed a request for entry of default.  (Dkt. No. 12.)  On September 12, 2017, the Clerk of the Court entered default against Defendants.  (Dkt. No. 13.) As of the date of this Decision and Order, Defendants have not appeared or attempted to cure that entry of default.  (*See generally* Docket Sheet.)

**D.      Plaintiff's Motion for Default Judgment and Defendants' Non-Response**

On October 27, 2017, Plaintiff filed a motion for default judgment against Defendants, pursuant to Fed. R. Civ. P. 55(b)(2).  (Dkt. No. 20.)  As of the date of this Decision and Order, Defendants have filed no response to that motion.  (*See generally* Docket Sheet.)

Generally, in support of its motion for default judgment, Plaintiff makes five arguments. (Dkt. No. 20, Attach. 3, at 4-26 [Pl.'s Mem. of Law].)  First, Plaintiff argues that it has sufficiently established liability on the alleged claims for the purposes of default judgment.  (*Id.* at 4-9.)  More specifically, Plaintiff acknowledges that a defendant cannot be held liable under both 47 U.S.C. § 553 (piracy through a coaxial cable) and 47 U.S.C. § 605 (signal piracy through airwaves) for the same conduct, but argues that the illegality of Defendants' conduct is apparent even without establishing the method that was used to pirate the signal because there is no legal way they could have intercepted and broadcast the March 11, 2017, match without a license.

(*Id.*)  Plaintiff also argues that Defendants' failure to answer the Complaint and the subsequent entry of default by the Clerk of the Court constitute an admission by Defendants of the facts in the Complaint, which further supports a finding that Defendants are liable for the purposes of default judgment.  (*Id.* at 4-5.)

Second, Plaintiff argues that it has sufficiently established entitlement to the requested damages under 47 U.S.C. § 605.  (*Id.* at 9-19.)  More specifically, Plaintiff argues that, regardless of whether Plaintiff establishes liability under either 47 U.S.C. § 553 or 47 U.S.C. § 605, many courts award damages under Section 605 because it provides for greater recovery. (*Id.* at 9-10.)  Plaintiff argues that it should be awarded statutory damages rather than actual damages given the difficulty of quantifying the damages in such a case, which includes not only the actual license price lost as a result of Defendants' illegal conduct, but the need to deter future illegal conduct and the loss of goodwill by other establishments who did purchase a license and may have been adversely impacted by Defendants' unlicensed exhibition of the March 11, 2017, match.  (*Id.* at 13.)  Plaintiff also argues that it is entitled to enhanced damages based on the willful nature of Defendants' conduct.  (*Id.* at 10-18.)  Plaintiff argues that, given the nature of the illegal conduct, the fact that Defendants stood to benefit financially from their conduct, and the fact that Defendants had obtained licenses from Plaintiff in past years (and were therefore fully aware that they needed a license to broadcast the covered matches), it is logical to conclude that Defendants' conduct was in fact willful.  (*Id.* at 11, 15-18.)  Plaintiff overall argues that it should be entitled to recover $5,000.00 in statutory damages and $10,000.00 in enhanced statutory damages under 47 U.S.C. § 605.  (*Id.* at 26.)

Third, Plaintiff argues that is also sufficiently established entitlement to the requested damages under 17 U.S.C. § 504 based on Defendants' violation of 17 U.S.C. § 501. (*Id.* at 19-23.) Plaintiff notes that it elects to recover statutory damages rather than actual damages as permitted by 17 U.S.C. § 504(c). (*Id.* at 19.) Plaintiff specifically requests an award of statutory damages of $5,000.00 based on the money lost in licensing fees and the money spent in "policing its signals to protect its interests." (*Id.* at 21-22.) Plaintiff also argues that it should be awarded enhanced statutory damages of $10,000.00 based on the willful nature of Defendants' conduct. (*Id.* at 22-23.)

Fourth, Plaintiff argues that Defendant Nichols should be held liable under the theory of vicarious liability for any infringing activities committed by others because he had supervisory control over the infringing activities, a financial stake in the business, and close control over the internal operating procedures and employment practices of The Blind Tiger Pub. (*Id.* at 24.)

Fifth, and last, Plaintiff argues that it is entitled to recover fees and costs under the Federal Communications Act and the U.S. Copyright Act. (*Id.* at 24-26.) More specifically, Plaintiff argues that it is entitled to recover filing fees, service of process costs, and attorneys' fees incurred in pursuing this case totaling $3,974.05. (*Id.* at 24-27.)

E. **Plaintiff's Request for Damages and Fees**

In its motion, affidavits, and memorandum, Plaintiff requests that the following damages and fees be awarded in this action:

(a) Statutory Damages Against Defendant Nichols

    (1) $5,000.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II);

    (2) $10,000.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii);

      (3)      $5,000.00 pursuant to 17 U.S.C. § 504(c)(1); and

      (4)      $10,000.00 pursuant to 17 U.S.C. § 504(c)(2);

(b)      Statutory Damages Against Defendant JJAGQ Enterprises

      (1)      $5,000.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II);

      (2)      $10,000.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii);

      (3)      $5,000.00 pursuant to 17 U.S.C. § 504(c)(1); and

      (4)      $10,000.00 pursuant to 17 U.S.C. § 504(c)(2);[1]

(c)      Costs and Fees

      (1)      $400.00 for filing fees;

      (2)      $450.00 for service of process; and

      (3)      $3,124.05 for attorneys' fees.

(Dkt. No. 20, at 1-2 [Motion]; Dkt. No. 20, Attach. 2, at 5-9 [Hufnagel Aff.]; Dkt. No. 20, Attach. 3, at 26-27 [Defs.' Mem. of Law].)

## II.    RELEVANT LEGAL STANDARD

"Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant." *Robertson v. Doe*, 05-CV-7046, 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008). "First, under Rule 55(a), when a party

---

[1]      Although Plaintiff's manner of listing these expenses might suggest that it is requesting a total of $10,000.00 in statutory damages ($5,000.00 from Nichols and $5,000.00 from JJAGQ Enterprises) and a total of $20,000.00 in enhanced damages ($10,000.00 from Nichols and $10,000.00 from JJAGQ Enterprises) for each cause of action, that interpretation is contradicted by clarifying statements in Plaintiff's memorandum of law. Notably, in its conclusion, Plaintiff argues that it is "entitled to a default judgment against Defendants holding them liable for a sum, in the discretion of the court, in the amount of $15,000.00 for violation of § 605, [and] $15,000 for their violation of 17 U.S.C. § 501." (Dkt. No. 20, Attach. 3, at 26 [Pl.'s Mem. of Law].) The Court therefore construes Plaintiff's motion as requesting a total of $30,000.00 in statutory and enhanced damages, jointly and severally, against all Defendants, rather than as requesting $30,000.00 against each individual Defendant.

fails to 'plead or otherwise defend . . . the clerk must enter the party's default.'" *Robertson*, 2008

WL 2519894, at *3 (quoting Fed. R. Civ. P. 55[a]). "Second, pursuant to Rule 55(b)(2), the

party seeking default judgment is required to present its application for entry of judgment to the

court." *Id.* "Notice of the application must be sent to the defaulting party so that it has an

opportunity to show cause why the court should not enter a default judgment." *Id.* (citing Fed.

R. Civ. P. 55[b][2]). "When an action presents more than one claim for relief . . . , the court may

direct entry of a final judgment as to one or more, but fewer than all, claims or parties . . . if the

court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

When a court considers a motion for the entry of a default judgment, it must "accept[ ] as

true all of the factual allegations of the complaint . . . ." *Au Bon Pain Corp. v. Artect, Inc*., 653

F.2d 61, 65 (2d Cir. 1981) (citations omitted). "However, the court cannot construe the damages

alleged in the complaint as true." *Eng'rs Joint Welfare, Pension, Supplemental Unemployment*

*Benefit and Training Funds v. Catone Constr. Co., Inc*., 08-CV-1048, 2009 WL 4730700, at *2

(N.D.N.Y. Dec. 4, 2009) (Scullin, J.) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183

F.3d 151, 155 [2d Cir. 1999] [citations omitted]). "Rather, the court must 'conduct an inquiry in

order to ascertain the amount of damages with reasonable certainty.'" *Eng'rs Joint Welfare,*

*Pension, Supplemental Unemployment Benefit and Training Funds*, 2009 WL 4730700, at *2

(quoting *Alcantara*, 183 F.3d at 155 [citation omitted]). This inquiry "involves two tasks: [1]

determining the proper rule for calculating damages on such a claim, and [2] assessing plaintiff's

evidence supporting the damages to be determined under this rule." *Alcantara*, 183 F.3d at 155.

Finally, in calculating damages, the court "need not agree that the alleged facts constitute a valid

cause of action . . . ." *Au Bon Pain*, 653 F.2d at 65 (citation omitted).

Under N.D.N.Y. L.R. 55.2(a), when requesting an entry of default judgment from the Clerk of the Court, the moving party must submit (a) the Clerk's certificate of entry of default, (b) a statement showing the principal amount due (not to exceed the amount demanded in the Complaint and giving credit for any payments with the dates of payments), (c) a computation of the interest to the day of judgment, (d) a per diem rate of interest, (e) the costs and taxable disbursements claimed, and (f) an affidavit of the moving party or the party's attorney. N.D.N.Y. L.R. 55.2(a). The appended affidavit must show that (a) the party against whom judgment is sought is not an infant or incompetent person, (b) the party against whom judgment is sought is not in military service, (c) the party against whom judgment is sought has defaulted in appearance in the action, (d) service was properly effected under Fed. R. Civ. P. 4, (e) the amount shown in the statement is justly due and owing and no part has been paid except as set forth in the party's other statement, and (f) disbursements sought to be taxed have been made in the action or will necessarily be made or incurred. *Id.*

Under N.D.N.Y. L.R. 55.2(b), when moving for an entry of default judgment from the Court, the moving party must submit (a) the Clerk's certificate of entry of default, (b) a proposed form of default judgment, (c) a copy of the pleading to which no response has been made, and (d) an affidavit of the moving party or its attorney setting forth the facts required by N.D.N.Y. L.R. 55.2(a). N.D.N.Y. L.R. 55.2(b).

## III. ANALYSIS

### A. Whether Plaintiff is Entitled to an Entry of Default Judgment and Damages

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 20, Attach. 3, at 4-26 [Pl.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

As an initial matter, the Court notes that Plaintiff's motion for default judgment does not meet all of the requirements outlined in N.D.N.Y. L.R. 55(b). Specifically, Plaintiff's application does not include either the Clerk's certificate of entry of default or a copy of the Complaint. (*See generally* Dkt. No. 20 [Pl.'s Motion and Attachments].) Although failure to comply with the procedural requirements under the Local Rules can be a ground for denying Plaintiff's motion, the Court finds that the interests of judicial economy and efficiency are better served by deciding Plaintiff's motion on the merits, given the fact that the Clerk's certificate of entry of default and the Complaint are a part of the docket for this case and therefore available to the Court and all parties, and that Plaintiff has otherwise provided sufficient evidentiary materials related to the issues of liability and entitlement to damages. (Dkt. Nos. 1, 13, 20.) Plaintiff is, however, reminded that it should ensure that it complies with the Local Rules in all matters in the future.

### 1. Liability

An entry of default "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). However, "[a] court's decision to enter a default against defendants does not by definition entitle plaintiffs to an entry of a default judgment. Rather, the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 188 (2d Cir. 2015).

As to the First Claim, 47 U.S.C. § 605 provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). "'Section 605(a) has been held to apply to the interception of cable communications originating as a satellite or radio transmission.'" *Joe Hand Promotions, Inc. v. Meunier*, 15-CV-1334, 2017 WL 56704, at *2 (N.D.N.Y. Jan. 5, 2017) (Kahn, J.) (quoting *Innovating Sports Mktg., Inc. v. Aquarius Fuente De Soda, Inc.*, 07-CV-2561, 2009 WL 3173968, at *5 [E.D.N.Y. Sept. 30, 2009]). Under the Federal Communications Act, in order for an individual to be liable for a violation, "the complaint must establish that the individual has a 'right and ability to supervise' the violations as well as an obvious and direct financial interest in the misconduct." *Garden City Boxing Club, Inc. v. 135 Hunt Station Billiard, Inc.*, 07-CV-3849, 2012 WL 4328355, at *2 (E.D.N.Y. June 21, 2012) (quoting *J & J Sports Prods. v. 291 Bar & Lounge*, 648 F. Supp. 2d 469, 473 [E.D.N.Y. 2009]).

As to the Second Claim, 47 U.S.C. § 553(a)(1) provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1).

As to the Third Claim, 17 U.S.C. § 501(a) provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 . . . is an infringer of the copyright." 17 U.S.C. § 501(a). All participants in copyright infringement are jointly and severally liable and "any individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally

participates in that activity, is personally liable for that infringement." *Buttnugget Publ'g v.*

*Radio Lake Placid, Inc.*, 807 F. Supp. 2d 100, 107 (N.D.N.Y. 2011) (D'Agostino, J.)

Plaintiff's allegations in the Complaint, taken as true, establish liability on the first and

third claims. (Dkt. No. 1, at ¶¶ 17-42 [Pl.'s Compl.].) More specifically, as to the First Claim

(under 47 U.S.C. § 605), although Plaintiff acknowledges in its memorandum of law that it does

not know the precise method by which Defendants intercepted the signal of the March 11, 2017,

match, the Complaint alleges "Defendants and/or their agents, servants, workmen or employees,

without paying Plaintiff a fee or entering into an agreement with Plaintiff, unlawfully

intercepted, received and/or descrambled [the] satellite signal and did exhibit the Broadcast at

the above address at the time of its transmission willfully and for the purposes of direct or

indirect commercial advantage or private financial gain." (*Id.* at ¶ 20.) Plaintiff also alleges that

"Defendants and/or their agents, servants, workmen and/or employees used an illegal satellite

receiver, intercepted Plaintiff's signal and/or used a device to intercept Plaintiff's Broadcast,

which originated via satellite uplink and then re-transmitted via satellite or microwave signal to

various cable and satellite systems." (*Id.* at ¶ 21.) These allegations, taken as true, are sufficient

to establish liability under 47 U.S.C. § 605.[2]

_____

[2]      Because, as Plaintiff acknowledges, Defendants cannot be held liable under both
47 U.S.C. § 553 or 47 U.S.C. § 605 for the same conduct, it is unnecessary to determine whether
Plaintiff has also sufficiently alleged facts to establish liability under 47 U.S.C. § 553 for the
purposes of this motion. (Dkt. No. 20, Attach. 3, at 6-7 [Pl.'s Mem. of Law].) Plaintiff has also
indicated that, even if Defendants' liability can be established as to both sections, it elects to
recover damages under 47 U.S.C. § 605(a). (*Id.* at 9-10.) *See also G&G Closed Circuit Events,
LLC v. Carlos Laura Corp.*, 15-CV-3712, 2017 WL 933087, at *3 (E.D.N.Y. Feb. 16, 2017)
("[T]he Second Circuit has stated that where a defendant is found to have violated both statutes,
the court should award damages pursuant to Section 605."). Additionally, as noted above, the
Court need not direct an entry of final judgment as to all claims in a default judgment action.
Fed. R. Civ. P. 54(b)

As to the Third Claim (under 17 U.S.C. § 501), Plaintiff alleges that (a) it is "the owner of the exclusive right to distribute the 2017 Six Nations Rugby games in the United States, including the England v. Scotland Match, scheduled for March 11, 2017, via closed circuit television and via encrypted satellite signal," (b) it filed an application for a Certificate of Registration with the United States Copyright Office on March 24, 2017, (c) "Defendants never obtained the proper authority or license from Plaintiff to publically exhibit the Broadcast on March 11, 2017," and (d) "Defendants and/or their agents, servants, workmen or employees illegally intercepted the Broadcast and exhibited the same in their commercial establishment on March 11, 2017," "without paying the appropriate licensing fee to Plaintiff." (*Id.* at ¶¶ 34-38.) These allegations, taken as true, are sufficient to establish liability under 17 U.S.C. § 501.

Lastly, Plaintiff also argues that Defendant Nichols is liable for the alleged violations as an individual. (Dkt. No. 20, Attach. 3, at 24 [Pl.'s Mem. of Law].) In the Complaint, Plaintiff alleges that Defendant Nichols (a) is an officer, director, shareholder, principal, manager, and/or member of JJAGQ Enterprises, (b) is the individual who had supervisory capacity and control over the activities occurring in The Blind Tiger Pub on March 11, 2017, (c) received a financial benefit from the operations at The Blind Tiger Pub on March 11, 2017, and (d) is the individual who had close control over the internal operating procedures and employment practices of The Blind Tiger Pub on March 11, 2017. (Dkt. No. 1, at ¶¶ 10-13 [Pl.'s Compl.].) These allegations are sufficient to establish individual liability for the purposes of this default judgment motion. *See J & J Sports Prods., Inc. v. Welch*, 10-CV-0159, 2010 WL 4683744, at *6 (E.D.N.Y. Nov. 10, 2010) (finding that allegations that defendant was an officer/director/shareholder/principal in the business and had supervisory capacity and control over the relevant activities were sufficient

to establish joint and several liability for a 47 U.S.C. § 605 claim); *Buttnugget Publ'g*, 807 F. Supp. 2d at 107 (finding that allegations that defendant was president/sole member of the business, determined or had the ability to control policies and practices of the business regarding licensing, had the ability to supervise conduct by the business, and profited from the wrongful conduct were sufficient to establish joint and several liability for a 17 U.S.C. § 501 claim).

Based on all of the above, the Court finds that Plaintiff has established liability and therefore is entitled to an entry of default judgment.

### 2.    Damages

A finding of liability does not, by itself, establish that a plaintiff is entitled to all damages requested. *Mickalis Pawn Shop*, 645 F.3d at 128; *Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund*, 779 F.3d at 189. Rather, as noted above in Part II of this Decision and Order, the Court must determine the proper rule for calculating damages and review the evidence supporting Plaintiff's request for damages to determine the amount of damages with reasonable certainty.

"Damages, which are neither susceptible of mathematical computation nor liquidated as of the default, usually must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." *Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that "[t]he court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (a) conduct an accounting; (b) determine the amount of damages; (c) establish the truth of any allegation by evidence; or (d) investigate any other matter." Fed. R. Civ. P. 55(b)(2). However, the court need not hold a hearing if it can determine

from the available record a basis for the damages requested. *Buttnugget Publ'g*, 807 F. Supp. 2d at 110; *see also Fustok v. ContiCommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989) ("It [is] not necessary for the District Court to hold a hearing, as long as it is ensured that there [is] a basis for the damages specified in the default judgment."). "'The burden is on the plaintiff to establish entitlement to recovery.'" *United States v. LaBarge*, 15-CV-1330, 2017 WL 758514, at *2 (N.D.N.Y. Feb. 27, 2017) (D'Agostino, J.)

### a. Statutory Damages

Plaintiff requests statutory damages rather than actual damages under both 47 U.S.C. § 605 and 17 U.S.C. § 504. *See* 47 U.S.C. § 605(e)(3)(C)(i) (noting that the aggrieved party can elect either actual or statutory damages); 17 U.S.C. § 504(c)(1) (noting that the copyright owner may elect to recover statutory damages instead of actual damages at any time before the final judgment is rendered).

Beginning with Plaintiff's First Claim, 47 U.S.C. § 605(e)(3)(C)(i)(II) provides that an aggrieved party may recover an award of statutory damages for each violation "in a sum of not less than $1,000 or more than $10,000, as the court considers just[.]" 47 U.S.C. § 605(e)(3)(C)(i)(II). Additionally, "[i]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation." 47 U.S.C. § 605(e)(3)(C)(iii). When determining the justness of an award under 47 U.S.C. § 605, courts consider factors including (a) the pecuniary loss sustained by the victim as a result of the offense, (b) the financial resources of the defendants, (c) the financial needs and earning ability

of the defendants, and (d) the burden that the damage award would impose on the defendants relative to the burden alternative relief would impose. *G&G Closed Circuit Events, LLC*, 2017 WL 933087, at *4 n.1.

As noted above in Part I.E of this Decision and Order, with regard to its First Claim, Plaintiff requests $5,000.00 in statutory damages and $10,000.00 in enhanced damages under 47 U.S.C. § 605, or a sum of $15.000.00. (Dkt. No. 20, at 1-2 [Motion]; Dkt. No. 20, Attach. 2, at 5-9 [Hufnagel Aff.]; Dkt. No. 20, Attach. 3, at 26-27 [Defs.' Mem. of Law].)

After considering all relevant factors and evidence, the Court finds that Plaintiff's request for damages is reasonable and appropriate. Emails from Plaintiff's Vice President indicate that the license fee Defendants would have been required to pay was $1,500.00. (Dkt. No. 20, Attach. 1, at 13, 16.) The visit report from the auditor hired by Plaintiff establishes that there were 12 people present in The Blind Tiger Pub at the time the match was broadcast on March 11, 2017. (Dkt. No. 20, Attach. 1, at 7.) Taking into account the license fee, assuming that Defendants received some amount of profit per person in food and drink sales during the broadcast of the match, and accounting for the potential loss of goodwill towards Plaintiff from other establishments in the area that purchased a license and lost customers to The Blind Tiger Pub on March 11, 2017, statutory damages of $5,000.00 are reasonable. Such damages are also not excessive so as to disproportionately burden Defendants.

The Court also finds that the enhanced damages of $5,000.00 are reasonable and appropriate in this case. The Court agrees that Plaintiff has shown that Defendants acted willfully in its violation of 47 U.S.C. § 605, given that The Blind Tiger Pub had purchased licenses from Plaintiff for similar content in past years and was offered the opportunity to

purchase a license for the very content it exhibited on May 11, 2017, but declined to do so. (Dkt. No. 20, Attach. 1, at ¶¶ 9-10 [Kim Aff.]; Dkt. No. 20, Attach. 1, at 13-16.) Defendants would be hard-pressed to argue that they were unaware of the need to obtain a license to broadcast the March 11, 2017, match given these emails. Additionally, as Plaintiff argues, courts have found that the mere affirmative act of intercepting a cable or radio signal is willful because it cannot be done unintentionally. *See Joe Hand Promotions, Inc. v. Elmore*, 11-CV-3761, 2013 WL 2352855, at *8 (E.D.N.Y. May 29, 2013) (finding plaintiff entitled to enhancement where it showed, in part, that there was no way that the defendant could have inadvertently intercepted the broadcast); *Kingvision Pay-Per-View, Ltd. v. Recio*, 02-CV-6583, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) ("[D]efendants' actions were willful since they each took an affirmative action to illegally intercept Kingvision's broadcast using a satellite receiver and/or by using an illegal cable converter box or device."). Plaintiff has also alleged that Defendants' conduct was for the purpose of financial gain or otherwise led to financial gain. (Dkt. No. 1, at ¶¶ 20, 28 [Pl.'s Compl.].) "Courts typically fix the amount of enhanced damages as a multiple of the [basic] statutory damages award," and typically use multiples of two or three. *Elmore*, 2013 WL 2352855, at *8. However, the Court finds that enhanced damages using a multiple of one are appropriate here, despite the evidence that Defendants were acutely aware of the need to obtain a license, considering Defendants' status as a small business/small business owner and an indication in the docket that Defendant Nichols has since filed for Chapter 13 bankruptcy in the Northern District of New York.[3] These factors suggest that the requested enhanced damages

---

[3] The Court previously found that, based on submitted evidence, the claims in this action are not automatically stayed by Defendant Nichol's bankruptcy petition. (Dkt. No. 17 [Text Order of 9/26/2017].)

amount of $10,000.00 would be overly burdensome when considering Defendants' financial resources.

Turning to Plaintiff's Third Claim, 17 U.S.C. § 504(c)(1) provides that a copyright owner may elect to recover "an award of statutory damages for all infringements involved in the action, with respect to one work, for which any infringer is liable individually, or for which any two or more infringers are liable jointly or severally, in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Additionally, where the court finds that the infringement was committed willfully, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). When determining the justness of an award under 17 U.S.C. § 504, courts consider factors including (a) "the expenses saved and profits reaped by the defendants in connection with the infringements," (b) "the revenues lost by the plaintiff as a result of the defendants' conduct" and (c) "the infringers' state of mind." *Buttnugget Publ'g*, 807 F. Supp. 2d at 110 (quoting *Broadcast Music, Inc. v. Northern Lights, Inc.*, 555 F. Supp. 2d 328, 332 (N.D.N.Y. 2008) [Sharpe, J.]). Additionally, because the purpose of statutory damages under 17 U.S.C. § 504 is, in part, to deter infringement, "a statutory damage award should significantly exceed the amount of unpaid license fees" and "courts often impose statutory damages in an amount more than double unpaid licensing fees where the infringement was not innocent." *Id.*

As noted above in Part I.E of this Decision and Order, with regard to its Third Claim, Plaintiff requests $5,000.00 in statutory damages and $10,000.00 in enhanced damages under 17 U.S.C. § 504, or a sum of $15,000.00. (Dkt. No. 20, at 1-2 [Motion]; Dkt. No. 20, Attach. 2, at 5-9 [Hufnagel Aff.]; Dkt. No. 20, Attach. 3, at 26-27 [Defs.' Mem. of Law].)

The Court finds that the requested statutory damages are reasonable and appropriate for many of the same reasons discussed above. The Court reiterates the willful nature of Defendants' infringement given their prior knowledge of the need to obtain a license to exhibit the March 11, 2017, match. However, as above, the Court finds that enhanced damages of $5,000.00 are sufficient in this case. Although Defendants' acts were indeed willful, the evidence does not suggest that Defendants reaped significant profits (there were 12 patrons at The Blind Tiger Pub during the March 11, 2017, match) or that Plaintiff lost significant revenues (the only specifically quantifiable revenue alleged to be lost was the $1,500.00 licensing fee). Consequently, enhanced damages of $5,000.00, in addition to statutory damages, is sufficient to provide Plaintiff a just award.

For all of the above reasons, the Court finds that Plaintiff is entitled to an award of $10,000.00 in statutory and enhanced damages under 47 U.S.C. § 605, and $10,000.00 in statutory and enhanced damages under 17 U.S.C. § 504, a total of $20,000.00, for which Defendants are jointly and severally liable.

### b. Attorneys' Fees

In addition to statutory damages, Plaintiff also requests recovery of attorneys' fees in the amount of $3,124.05. (Dkt. No. 20, Attach. 2, at 5-9 [Hufnagel Aff.].) In support of this request, Plaintiff submitted time records indicating (a) the date on which work was performed, (b) the description of the work performed, (c) the hours expended on each task, (d) the hourly rate for the relevant attorneys and paralegals, (e) a description of who performed each task, and (f) a statement of the number of years of experience each attorney or paralegal possessed. (*Id.*) These records provide sufficient information from which the Court can determine the

reasonableness of the requested fees.  *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983) (ordering that any attorney applying for court-ordered compensation must document the application with contemporaneous time records that specify "for each attorney, the date, the hours expended, and the nature of the work done").  The relevant question is whether the amount of attorneys' fees requested is reasonable.[4]

The Court finds that the hours expended (19.79) are reasonable, but that the hourly rates charged ($250 for an associate attorney with 5 years of federal civil practice experience, $350 for a partner with over 20 years of federal civil practice experience, and $95 for a paralegal/legal assistant with over 25 years of experience) should be reduced to $200.00, $300.00, and $90.00, respectively, to reflect a reasonable rate for the Northern District of New York.  *See Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 13-CV-0831, 2018 WL 2604817, at *3 (N.D.N.Y. June 4, 2018) (Sharpe, J.) (finding reasonable rates for attorneys ranging from $280 to $450, and reasonable rates for paralegals of $150); *Richardson v. New York State Office of Mental Health*, 11-CV-1007, 2018 WL 2021536, at *2 (N.D.N.Y. Apr. 30, 2018) (D'Agostino, J.) (noting that "[r]ecent cases in the Northern District has upheld hourly rates between $250 and $345 for partners; between $165 and $200 for associates; and between $80 and $90 for paralegals"); *Int'l*

---

[4]     When determining what a reasonable client would be willing to pay, courts consider factors including (a) the time and labor required, (b) the novelty and difficulty of the questions presented, (c) the level of skill required to perform the legal service properly, (d) the preclusion of employment by the attorney due to acceptance of the case, (e) the attorney's customary hourly rate, (f) whether the fee is fixed or contingent, (g) the time limitation imposed by the client or the circumstances, (h) the amount involved in the case and the results obtained, (i) the experience, reputation, and ability of the attorneys, (j) the undesirability of the case, (k) the nature and length of the professional relationship with the client, and (l) awards in similar cases.  *Northern Lights, Inc.*, 555 F. Supp. 2d at 333 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Bd. of Elections*, 522 F.3d 182, 191 [2d Cir. 2008]).

*Brotherhood of Elec. Workers Local Union No. 1249 Pension and Ins. Funds by Dafor v. South Buffalo Elec., Inc.*, 15-CV-0682, 2018 WL 1224469, at *4 (N.D.N.Y. Mar. 8, 2018) (D'Agostino, J.) (awarding rates of $240 per hour for an experienced attorney and $95 per hour for paralegals); *United States ex rel. Rubar v. Hayner Hoyt Corp.*, 14-CV-0830, 2018 WL 566448, at *6 (N.D.N.Y. Jan. 25, 2018) (Sharpe, J.) (finding a request for $375 for partners and experienced attorneys, $280 for less-experience associates, and $150 for paralegals to be within the reasonable range); *Broad. Music, Inc. v. Rider Rock's Holding LLC*, 16-CV-1398, 2017 WL 2992498, at *3 (N.D.N.Y. July 14, 2017) (Suddaby, C.J.) (finding 15.5 hours in a copyright default judgment motion to be reasonable, and noting that courts had found a reasonable range for partners to be between $250 and $345, with courts consistently deeming $300 to be a reasonable hourly rate for an experienced partner).

The Court finds that, given the amount of experience of the relevant attorneys and paralegals, the amount of time spent on the case is reasonable. Notably, the only work charged to a partner (chargeable at the higher rate) is 0.10 hours for reviewing an email from Defendants; the rest of the attorney work (7.8 hours) was performed by an associate (chargeable at the lower rate) and the majority of the work (11.99 hours) was performed by a paralegal (chargeable at the lowest rate). (Dkt. No. 20, Attach. 2, at 6-9 [Hufnagel Aff.].) Such mindful division of labor further enhances the overall reasonableness of the requested fees. The Court therefore finds that, with the hourly rate reduction noted above, $2,669.10 in attorneys' fees is reasonable.

### c. Costs and Disbursements

Lastly, Plaintiff requests $400.00 for the filing fee and $450.00 for service of process in this case. (Dkt. No. 20, Attach. 2, at 9 [Hufnagel Aff.].) The docket report and the evidence

provided by Plaintiff with the motion for default judgment substantiates these costs. (Dkt. No. 1; Dkt. No. 20, Attach. 2, at 13-14.) The Court therefore finds that Plaintiff is entitled to recover these costs. *See Ferrara v. CMR Contracting LLC*, 848 F. Supp. 2d 304, 314 (E.D.N.Y. 2012) (awarding costs including court filing fees and service of process fees); *Sony BMG Music Entm't v. Larkin*, 08-CV-0702, 2009 WL 2176641, at *2 (N.D.N.Y. July 22, 2009) (Mordue, C.J.) (awarding $480 for filing and service fees); *Pyramid Walden Co., L.P. v. Diversifoods, Inc.*, 07-CV-0946, 2008 WL 466244, at *2-3 (N.D.N.Y. Feb. 15, 2008) (Scullin, J.) (awarding costs for filing and service fees); *Kingvision Pay-Per-View Ltd. v. Palaguachi*, 06-CV-2509, 2007 WL 42994, at *4 (E.D.N.Y. Jan. 3, 2007) (awarding $550 for the filing fee and cost of service of process).

However, the Court finds that a reduction in the amount recoverable for service of process costs is appropriate. *See Document Sec. Sys., Inc. v. Coupons.com, Inc.*, 11-CV-6528, 2015 WL 1189551, at *2 (W.D.N.Y. Mar. 16, 2015) (reducing the requested service of process fees from $1,744.67 to $330.00 because, even where a plaintiff uses a private process server, the Second Circuit does not allow recovery at a rate over the cost that would have been incurred if the U.S. Marshals Service served process). The current U.S. Marshals Service fee for service of process is $65.00 per hour, plus travel costs and out-of-pocket expenses. 28 C.F.R. § 0.114(a)(3). Plaintiff has not offered any evidence to show how many hours it took to serve process and the invoices from Mountain Support Services appear to charge a flat rate rather than an hourly rate. (Dkt. No. 20, Attach. 2, at 13-14.) The Court therefore finds that the service of process fees should be reduced to $180.00 ($65.00 for serving Nichols, $65.00 for serving JJAGQ Enterprises, and $50.00 for serving Nichols at an additional address). Plaintiff is entitled to recover a total of $580.00 in costs and disbursements.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motions for default judgment (Dkt. No. 20) is **<u>GRANTED</u>**, and it is further

**ORDERED** that the Clerk of the Court is directed to enter a default judgment in Plaintiff's favor against Defendants in the amount of **TWENTY THREE THOUSAND TWO HUNDRED FORTY NINE DOLLARS AND TEN CENTS ($23,249.10)**.

Date:   July 25, 2018
            Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge